CAROLINE G. ONKEN, petitioner-respondent,

*v.*

THEODORE ONKEN, defendant-appellant.

[Decided January 26th, 1938.]

On appeal from an order of the court of chancery advised by Advisory Master Child, who filed the following opinion:

"The above named petitioner filed a petition for divorce against the defendant in 1924. Jurisdiction for the purpose of divorce was acquired by substituted service upon the defendant who was then a resident of the State of New York. It appears that on or about July 2d, 1924, the defendant, after being served with papers in the divorce proceedings, consulted Mr. Lemuel Skidmore, a New York attorney, and, according to the affidavit of Mr. Skidmore filed in this cause, he was engaged to represent the defendant in the matter of alimony. Mr. Skidmore further states that it was his recollection that either at the conference in July, 1924, or at a later time, the question of the validity of a divorce obtained without personal service upon the defendant within the jurisdiction, or appear-

ance by the defendant, was discussed and that the defendant stated to Mr. Skidmore that if there was to be a divorce he wanted it to be a good divorce and one that would hold and could not be later questioned.

"Thereafter on August 9th, Mr. Edward B. Twombly, one of Mr. Skidmore's partners, signed a stipulation *extending the defendant's time to appear and answer until September 10th, 1924,* and containing the clause: 'It is understood and agreed that the appearance of the solicitor for the defendant is a special appearance for the purpose of making this stipulation only.' Thereafter negotiations were had between the attorneys for the petitioner and the attorneys for the defendant with the result that the attorneys agreed upon alimony of $110 a month, and Mr. Henry Twombly appeared before the special master and stipulated that $110 a month should be paid.

"The question at issue is: Was the defendant in court to such an extent that a valid and binding decree for alimony could be entered against him? That Mr. Twombly or his firm was engaged to represent the defendant in the matter of alimony cannot be controverted, in view of the affidavits filed in this cause. The defendant paid a bill for services rendered. In my opinion, the defendant was not only interested in the question of alimony but also desired to have his wife procure a divorce that would be recognized in the courts of the State of New York.

"The defendant knew of the entry of the order for alimony for he paid the amount stipulated for many years. He unquestionably engaged Mr. Twombly's firm to represent him, and, in my opinion, entered an appearance generally through that firm when it procured an extension of time to answer. The fact that a special appearance was attempted to be made cannot alter the situation, as I view it. The defendant acquired by stipulation the right to file an answer out of time. He cannot have the benefits without assuming the obligation of having the stipulation constitute a general appearance, but aside from this there was an appearance by

a solicitor whom I believe to be authorized to represent the defendant on the record:

" 'It is hereby stipulated and agreed that the amount of permanent alimony be fixed in the sum of One hundred and ten Dollars ($110.00) per month, that being the proper and necessary amount of alimony in view of the circumstances of the defendant and the needs and requirements of the petitioner. Solicitor for defendant expressly waives the notice of hearing as required by Chancery Rule 262.'

"The foregoing stipulation was acquiesced in for many years and was never repudiated until the present order was obtained.

"The effect of an appearance by a solicitor is discussed in the cause of *Gifford, Adm'r,* v. *Thorn, 9 N. J. Eq. 702* (at *p. 722*), where the court said:

" 'So far as regards the conclusive effect of the decree of the court of chancery of New York, the whole inquiry is whether Elizabeth Hait was properly before the court or not. Upon the record it appears that she was. She appeared by her solicitor. He consented to the decree. The decree is valid upon its face. To avoid its conclusive operation, the complainant must show that the solicitor had no authority to appear for her. The presumption is in favor of his authority. It was anciently held that the party was concluded by an appearance, though entered without authority, and could not be relieved against it even in the court in which the judgment was entered. The modern rule is otherwise, but all the cases agree that the want of authority must be shown.'

"The burden of showing want of authority is upon the party asserting it, in this case the defendant.

"Payment of an attorney for his services has been held to amount to a ratification of the attorney's acts, resulting in a judgment against the defendant, even though the attorney's appearance was originally without authority. *Ryan* v. *Doyle, 31 Iowa 53;* also see *88 A. L. R. 65-67; Hendrickson* v. *Hendrickson, 15 N. J. Law 102.*

"The defendant is also guilty of laches in having waited

more than twelve years since the entry of the decree compained of.

"Vice-Chancellor Van Fleet, in the case of *Mutual Life Insurance Co.* v. *Pinner, 43 N. J. Eq. 52* (at *p. 54*), said:

" 'More than ten years have elapsed, it will be observed, since the act was done which the defendant now says was unauthorized. As the defendant is responsible for this delay there can be no doubt that his laches should defeat his application. If, with full knowledge of the act which he now says was wrongful, he has for this long period, stood by, neither asking for redress nor complaining, his conduct would bear but one interpretation: he did not complain before because he knew he had no cause for complaint, and he only complains now either because he has forgotten what the facts were or because he believes proof of them cannot be made.'

"I have not overlooked the fact that the affidavit of the defendant's former solicitor was that while the solicitor procured the decree *nisi,* which had incorporated therein the provisions for alimony, that the decree was never delivered to the defendant. In my opinion, this makes no difference, if the defendant knew that the court had ordered the payment of $110 per month alimony, in accordance with the stipulation entered of record by his solicitor.

"The defendant will accordingly be adjudged guilty of contempt of court for his failure to obey the order of this court, unless he can show that he is unable to pay the arrears of alimony. If he desires to endeavor to show that, there will be a reference to a master on that question."

*Mr. Anthony P. La Porta,* for the appellant.

*Mr. George C. Winne,* for the respondent.

PER CURIAM.

The order appealed from will be affirmed, for the reasons stated in the opinion delivered by Advisory Master Child in the court of chancery.

*For affirmance*—PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, WALKER, JJ. 13.

*For reversal*—None.